[No. 20430.  Department One.  August 26, 1927.]

THE STATE OF WASHINGTON, *Appellant,* v. GEORGE BUCKLEY, *Respondent.*[1]

[1] CRIMINAL LAW (123)—EVIDENCE OBTAINED BY UNLAWFUL SEARCH —ADMISSIBILITY.  Under Rem. Comp. Stat., § 2240-1, making it a misdemeanor to search a private dwelling house or place of residence without a search-warrant, police officers act unlawfully in searching, without a warrant, defendant's apartments before making an arrest; and in a prosecution for burglary, it is error to admit in evidence the articles stolen, found by the officers on such search.

Appeal from a judgment of the superior court for King county, Douglas, J., entered November 20, 1926, granting a new trial after a verdict of the jury rendered in favor of the plaintiff, upon a trial and conviction of burglary.  Affirmed.

*Ewing D. Colvin* and *Harry A. Rhodes,* for appellant.

*Henry Clay Agnew,* for respondent.

FULLERTON, J.—The defendant Buckley was found guilty by the verdict of a jury of the crime of burglary. After the return of the verdict, he moved for a new trial on the statutory ground of errors of law occurring at the trial and excepted to by the defendant.  This motion the trial court granted, on the sole ground that error had been committed at the trial because of the admission in evidence of certain exhibits offered on the part of the state.  The state appeals.

The facts pertinent to the assignments of error made are in substance these:  On September 8, 1926, a Mr. and Mrs. DeYoe and a Miss DeYoe were the occupants of a suite of rooms in an apartment house in the city of Seattle.  In the early morning of the day named,

¹Reported in 258 Pac. 1030.

Mrs. DeYoe was aroused from her sleep by the presence of a strange man in her sleeping room. The man left the room as she was aroused and she caught only a fleeting glimpse of him. She was able, however, to describe with some particularity the manner in which he was dressed. He had on dark trousers, a light shirt, which she took to be an undershirt, and was without a hat. Whether he had shoes on or not she could not determine. She awoke her husband and her sister-in-law, and an examination was made to ascertain whether anything had been taken from the rooms. It was discovered that a wrist-watch and some four dollars and fifty cents in silver belonging to Mrs. DeYoe were missing, and that there were missing from Miss DeYoe's purse a traveler's check for twenty dollars, a twenty-dollar bill, a ten-dollar bill and a five-dollar bill in currency, and some silver, the total aggregating $61.95.

The city police were called, and, on inquiry, learned that the occupants of a certain other room in the apartment house had, in the early part of the night, been making considerable noise, and went to the room to investigate. On knocking at the door of the room, the door was partially opened by some one from the inside, when the officers, "without waiting for an invitation," pushed themselves into the room. They found the defendant and two other persons in the room. The defendant Buckley was lying on a bed dressed in his underclothes. A search was made, and the missing wrist-watch with some silver coin was found in one of the pockets of the defendant's trousers. Currency, in bills of the denominations taken from Miss DeYoe's purse was found in the pillow case of the pillow on which the defendant was lying. The occupants of the room were then arrested and taken to the police station. The traveler's check taken from

the purse of Miss DeYoe was not found by the police officers. It was found in the room, later in the day, by the janitor of the building who cleaned up the room after the occupants had been arrested and taken therefrom.

[1] The police officers searched the room without obtaining a search-warrant, and seized the articles found by them before the defendant was arrested. On the trial of the defendant, the court admitted in evidence as part of the state's case, the wrist-watch, the currency, and the traveler's check. It was because of the admission of the wrist-watch and the currency in evidence, that the court deemed it had committed error.

It is the rule of the English courts, and is the rule of the courts in a majority of the American states, that the admissibility of evidence is not affected by the manner in which, the means by which, or the source from which, it is obtained. It is held that, if the evidence is otherwise pertinent to the issue, it is no valid objection to its admissibility to show that it was unlawfully or illegally obtained. See the note of Mr. Freeman to *State v. Turner,* 82 Kan. 787, 109 Pac. 654, 136 Am. St. 129, 135. The highest court of the land, however, has uniformly followed a contrary rule. It has said, in no uncertain language, that it is beneath the dignity of the state, and contrary to public policy, for the state to use for its own profit evidence that has been obtained in violation of law. *Boyd v. United States,* 116 U. S. 616; *Weeks v. United States,* 232 U. S. 383; *Silverthorne Lumber Co. v. United States,* 251 U. S. 385; *Gouled v. United States,* 255 U. S. 298; *Amos v. United States,* 255 U. S. 313; *Agnello v. United States,* 269 U. S. 20. We have ourselves followed the Federal rule. *State v. Gibbons,* 118 Wash.

171, 203 Pac. 390; *State v. Dersiy,* 121 Wash. 455, 209 Pac. 837; *State v. Smathers,* 121 Wash. 472, 209 Pac. 839.

The rule is subject to the exception that the objection must be timely made (*State v. Dersiy; State v. Smathers, supra*); but here, as the trial court ruled, the objection was timely.

That the search and seizure in this instance was unlawful, the evidence leaves but little room to doubt. The statutes of this state have, from the earliest times, contained provisions for the issuance of search-warrants, prescribing with some detail the circumstances under which such warrants may be issued. The earlier statutes contained no penalty for a search without a warrant. The legislature, at its biennial session of 1921, supplied this deficiency. Laws of 1921, p. 207; Rem. Comp. Stat., § 2240-1. It was then made unlawful for any policeman, or other police officer, to search any private dwelling house, or place of residence, without the authority of a search-warrant issued upon a complaint as by law provided, and a violation of the act was denounced as a gross misdemeanor. It may be, as the state's learned counsel argue, that the police officers did not violate this provision of the statute in entering the defendant's room under the circumstances in which they did enter it, but manifestly, we think, they did violate it by making a search of the room after the entry.

Under the rule as we have heretofore announced it, the admission in evidence of the articles found on the search was error, and the trial court, therefore, rightfully granted a new trial. Its order to that effect is affirmed.

MACKINTOSH, C. J., MAIN, FRENCH, and MITCHELL, JJ., concur.