[No. 23351-7-II.   Division Two.   February 15, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. KURT JONES, *Appellant*.

*Thomas E. Doyle, Robert M. Quillian,* and *Patricia A. Pethick,* for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney,* and *Carol L. Case, Deputy,* for respondent.

HUNT, A.C.J. — Kurt Jones appeals his conviction for unlawful possession of a firearm, arguing that the trial court should have granted his motion to suppress evidence. We hold that *State v. Parker*[1] does not expand Jones' expectation of privacy in his passenger's purse beyond that which he would have enjoyed had the purse belonged to him. Therefore, we affirm.

## FACTS

Shortly after midnight, Mason County Sheriff Deputy Kenneth McGill stopped Jones for a traffic violation. Deputy Michael Hayes soon arrived at the scene. McGill called in a license check, and the dispatcher confirmed that Jones had an outstanding arrest warrant. McGill then arrested Jones, handcuffed him, and placed him in McGill's patrol car.

Marie Gale, Jones' girl friend of seven years, was seated on the passenger side of the car. Deputy Hayes approached her and asked for identification, which she produced from "[h]er purse." Gale had no known outstanding warrants, she gave no reason to suspect her of criminal activity, and "she was very cooperative." Hayes put Gale in his patrol car and advised her "that she was not under arrest, that she was just being placed in my vehicle at the time for officer safety issues." At the officer's direction, Gale left her purse in the car.

---

[1] *State v. Parker,* 139 Wn.2d 486, 987 P.2d 73 (1999).

Incident to Jones' arrest, the officers searched the car. One officer found a gun inside Gale's purse on the passenger seat and unloaded it. Dispatch reported the gun stolen. Jones confirmed that Gale commonly kept his personal items in her purse and explained that he expected his property to remain private there.[2]

The State charged Jones with second degree unlawful possession of a firearm under RCW 9.41.040(1)(b). The trial court denied Jones' motion to suppress the gun and his admission of ownership:

> The court will find for the State based upon the conclusion in *State v. Hunnel*,[3] which read that Hunnel's purse was a searchable container in the car pursuant to *Belton*[4] and *Stroud*[5] . . . [T]he officer's right to search the purse arose at the time of the arrest and, therefore, the officer's seizure of the purse by ordering it left in the car was proper.

Suppl. Clerk's Papers at 15-17. At the subsequent bench trial, the trial court considered the CrR 3.6 suppression hearing record and found Jones guilty.

## ANALYSIS

### I. SEARCH INCIDENT TO ARREST

■ ■ Generally, the Fourth Amendment to the United States Constitution prohibits warrantless searches. *New York v. Belton*, 453 U.S. 454, 457, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). A well-recognized exception is a search

---

[2] Jones also acknowledged that he respected Gale's privacy in her purse and did not "go through" it.

[3] 89 Wn. App. 638, 949 P.2d 847 (1998) (nonarrested passenger's purse is searchable incident to arrest of driver even where officer ordered passenger to leave purse behind). However, our decision in *Hunnel* was subsequently reversed (after Jones was tried and convicted) in *Parker*, 139 Wn.2d 486 (five-justice plurality reversed our holding in *Hunnel* that a nonarrested passenger's purse could be searched incident to the arrest of the driver, notwithstanding that an officer ordered the passenger to leave the purse behind as she was exiting the car). But *Parker* does not apply here. *See* analysis, *infra*.

[4] *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

[5] *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986).

incident to arrest. *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986).

## A. STROUD

■■ In *Stroud*, the Washington Supreme Court articulated a bright-line rule that applies to warrantless searches of automobiles, incident to the driver's arrest:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence.

*Stroud*, 106 Wn.2d at 152. This rule permits the police to "search the [entire] contents of the passenger compartment exclusive of locked containers or locked glovebox." *State v. Fladebo*, 113 Wn.2d 388, 395, 779 P.2d 707 (1989) (citing *Stroud*, 106 Wn.2d at 152). Two rationales support this exception to the warrant requirement: (1) to prevent the arrestee from grabbing a weapon that may remain in the vehicle and threaten officer safety, and (2) to prevent the arrestee from destroying evidence that may remain in the vehicle. *Stroud*, 106 Wn.2d at 151 (citing *Belton*, 453 U.S. at 458).

## B. PARKER INAPPLICABLE

■ Jones contends that our Supreme Court's recent plurality decision in *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999) requires suppression here. We disagree. *Parker* is limited to prohibiting evidence found in a nonarrested passenger's purse from being used against that passenger; *Parker* does not apply to use of such evidence against the arrested driver.

Moreover, the *Parker* court did not render a single, definitive opinion. Portions of several opinions overlap to

form a "majority,"[6] thus yielding a narrow "holding":[7] Evidence seized during a warrantless search of a vehicle, from a container that police *know* belongs to a nonarrested occupant, cannot be used *against that nonarrested occupant*, absent some independent reason to suspect that such person is dangerous or that a weapon or contraband is concealed in the container.[8]

Central to the *Parker* plurality's opinion is that "where a person is not under arrest there can be no search incident thereto." *Parker*, 139 Wn.2d at 497. At the time of the vehicle searches, no passengers were under arrest in any of the *Parker* trilogy[9] or in the case before us. In *Parker*, as here, the police searched the vehicles and their contents incident to lawful arrests of the drivers. But the *passengers* in *Parker*, not the drivers, were ultimately charged and convicted for possession of controlled substances found in their belongings left behind in the searched vehicles. And it was these *passengers'* convictions that the *Parker* court reversed.

In contrast, the case before us does not involve the arrest and conviction of the passenger whose purse was left behind and searched in the vehicle. Rather, the officer arrested *the driver*, Jones, on an arrest warrant. Incident to Jones' lawful arrest, the officer then conducted a lawful

---

[6] This "holding" is consistent with the plurality's acknowledgment that Washington law provides greater privacy protection to vehicle passengers than to drivers. *Parker*, 139 Wn.2d at 495-96 (citing *State v. Mendez*, 137 Wn.2d 208, 219-20, 970 P.2d 722 (1999)).

[7] The *Parker* plurality concluded that the scope of a passenger-compartment-search incident to arrest of another occupant of the vehicle does not extend to a nonarrested passenger's purse for use as evidence *against that passenger* if the officer "know[s]" the purse belongs to the passenger, "absent an independent, objective basis to believe [the purse] hold[s] a weapon or evidence." *Parker*, 139 Wn.2d at 505.

[8] Only one justice held that the searches in *Parker* exceeded the scope of valid searches incident to arrest. Thus, *Parker* does *not* hold that a valid search incident to arrest of one vehicle occupant must bypass containers known to belong to others, when the evidence is used only against the vehicle occupant for whom there was probable cause to arrest.

[9] The *Parker* opinion resolves three separate cases consolidated on appeal: *State v. Parker*, *State v. Jines*, and *State v. Hunnel*, 139 Wn.2d 486.

search of the vehicle and its contents, including Gale's purse. But unlike *Parker*, here the passenger does not challenge the search of her purse.[10] Rather, Jones, the lawfully arrested driver, challenges the search of the passenger's purse. It would be inconsistent with well-established law of search incident to arrest to read *Parker*, as Jones essentially urges, to allow a search of the purse if Jones claimed ownership,[11] but *not* to allow a search of the purse if the police knew it belonged to Gale. This inconsistency is especially striking in light of Jones' acknowledgement that he had access to the purse for purposes of storing his personal items, including "his" stolen gun.

The privacy right that the *Parker* plurality sought to protect was the privacy of the nonarrested passenger, a warrantless search of whom was unjustified and illegal absent some articulable suspicion directed at the passenger.[12] But again, here, unlike in *Parker*, the officer did not search the passenger. Rather, he searched only the driver, Jones.

## II. STANDING

To decide whether the trial court erred in denying Jones' motion to suppress, we must first determine whether Jones has standing to challenge the search of Gale's purse.

---

[10] Following *Parker*, we reversed passenger Gale's related narcotics possession conviction in an unpublished opinion. *State v. Gale*, No. 23326-6-II, 2000 Wash. App. LEXIS 773, 2000 WL 656504 (Wash. Ct. App. May 19, 2000).

[11] At oral argument before this court, Jones agreed that search of the purse would have been legal as incident to his arrest if he had owned the purse.

[12] "[R]eadily recognizable personal effects are protected from search to the same extent as the person to whom they belong." *Parker*, 139 Wn.2d at 498.

## A. AUTOMATIC STANDING[13]

■ Although the United States Supreme Court has abandoned the automatic standing rule, its status remains unclear in the State of Washington.[14] Under the automatic standing rule, "a defendant has standing to claim the constitutional protection from unreasonable searches and seizures if he was legitimately on premises where a search occurred and if the fruits of the search are proposed to be used against him." *State v. Michaels*, 60 Wn.2d 638, 646, 374 P.2d 989 (1962).

■ ■ If applicable, automatic standing to challenge a search or seizure requires a defendant to establish two elements: (1) The offense with which he is charged must involve possession as an "essential" element of the offense; and (2) the defendant must be in possession of the contraband at the time of the contested search or seizure. *State v. Simpson*, 95 Wn.2d 170, 181, 622 P.2d 1199 (1980) (citing *Michaels*, 60 Wn.2d at 646-47). Both elements are satisfied here. First, Jones was charged with unlawful possession of a firearm. Second, he was in constructive possession of Gale's purse, in that he exercised dominion and control over his car and the contents therein, he also stored items in her

---

[13] Automatic standing does not mean automatic privacy rights or automatic suppression. Our Supreme Court has noted:

Petitioner contends the automatic standing doctrine provides a rule more easily understood than the "legitimate expectation of privacy" test, and that offenders' entitlement to it deters illegal police behavior. Petitioner's reasoning is not persuasive. Adopting a blanket rule that a defendant charged with a possessory offense will always have a privacy interest promotes "blind adherence" to the assumption that possession of a seized good is an adequate measure of Fourth Amendment rights. The trial court can determine whether a due process violation exists on a case-by-case basis in motions to suppress evidence under CrR 3.6.

*State v. Carter*, 127 Wn.2d 836, 846-47, 904 P.2d 290 (1995) (footnote omitted).

[14] Our State Supreme Court recently recognized that the United States Supreme Court has abandoned the rule, traced its evolution in the State of Washington, and noted that "automatic standing still maintains a presence in Washington." *State v. Williams*, 142 Wn.2d 17, 22, 11 P.3d 714 (2000), based on its plurality decision in *State v. Simpson*, 95 Wn.2d 170, 181, 622 P.2d 1199 (1980). The Court's comment about the continued viability of automatic standing in Washington is dicta, however, in light of the Court's subsequent comment that "this is not a proper case to apply automatic standing." *Williams*, 142 Wn.2d at 22.

purse, and he admitted that the gun in Gale's purse belonged to him. *See* Finding of Fact 7, Suppl. Clerk's Papers at 19.[15] Thus, assuming, without deciding, that the automatic standing rule still applies in Washington, Jones would have automatic standing to challenge the seizure of his gun from Gale's purse.

## B. WILLIAMS

■ Moreover, Jones' contention that "his" gun should have been suppressed is inconsistent with the Supreme Court's recent opinion in *State v. Williams*, 142 Wn.2d 17, 11 P.3d 714 (2000), in which a clear majority of the court recited:

> "[D]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule *if their own Fourth Amendment rights have in fact been violated*."
>
> . . . .
>
> . . . Inherent in the conditions for automatic standing is the principle that the "fruits of the search" bear a direct relationship to the search the defendant seeks to contest.

*Williams*, 142 Wn.2d at 21-23 (emphasis added) (citations omitted).

## C. STANDING IN JONES' OWN RIGHT

■ ■ Even if the automatic standing rule is not applicable, Jones has standing in his own right to challenge the search of Gale's purse under the facts of this case. Nonetheless, he does not prevail on his argument for suppression.

On facts analogous to those here, the *Williams* court noted:

---

[15] *Parker* did not alter the established principle that the passenger compartment is considered within an arrestee's immediate control and dominion even after the arrestee has been placed in custody. *Belton*, 453 U.S. at 460. The State may rely on this principle to justify a search incident to arrest even when the defendant is safely locked away in a patrol car.

[E]ven if Williams had standing in his own right, he would be unable to successfully challenge a police entry *of his own home* to serve an arrest warrant. We find no reason to confer *additional privacy protections* to suspects who are arrested in other persons' homes. We agree with the Ninth Circuit's observation that "[i]f an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's fourth amendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another." *United States v. Underwood*, 717 F.2d 482, 484 (9th Cir. 1983).

*Williams*, 142 Wn.2d at 24 (second alteration in original) (second emphasis added). Under the *Williams* rationale, because the arrest warrant protected Jones' privacy rights in his person, vehicle, and possessions, searched incident to his arrest, it also protected any privacy rights Jones had in another person's possessions, namely Gale's purse.

That Jones' gun was found in the purse of another does not expand his privacy rights beyond those he would have enjoyed if the purse had belonged to him.[16] *Williams*, 142 Wn.2d at 23. Certainly, Gale had a legitimate expectation of privacy in her purse, and the *Parker* rule makes the use of the gun as evidence *against her* inadmissible. But contrary to Jones' assertion, it does not follow that the gun was also, therefore, inadmissible against him. *Williams*, 142 Wn.2d at 23.

We therefore hold that the officer searched Gale's purse incident to Jones' lawful arrest, that the officer lawfully seized the gun from the purse, and that Jones' subsequent admission that he owned the gun was also lawful. The trial court did not err in denying Jones' motion to suppress.

Affirmed.

SEINFELD, J., concurs.

---

[16] And this determination is *without regard* to whether the privacy rights of *another* may have been violated. *Williams*, 142 Wn.2d at 23.

HOUGHTON, J. (concurring) — I concur with the majority but write separately to emphasize that the facts of this case show how *State v. Williams*, 142 Wn.2d 17, 11 P.3d 714 (2000), has completely eliminated one of the fundamental policy justifications for the automatic standing doctrine: automatic standing serves to protect the privacy interests of all Washington citizens by deterring illegal police conduct. *State v. Simpson*, 95 Wn.2d 170, 180, 622 P.2d 1199 (1980) (plurality opinion). In this case, the police invaded Gale's privacy by ordering her to leave her purse in the car and then searching it. This search was improper under the plurality opinion in *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999). Nevertheless, because *Williams* holds that automatic standing does not allow a defendant to assert the rights of a third person, we are compelled to find that Jones cannot challenge this illegal search, even though this illegal search produced the evidence that forms the basis of Jones's conviction. Under this result, police will still have incentive to invade the privacy of car passengers in hopes of finding evidence they can use against a driver whom they have legally arrested. Because of Washington's rules on possession and dominion and control, this incentive is great. *See, e.g., State v. Castle*, 86 Wn. App. 48, 935 P.2d 656, *review denied*, 133 Wn.2d 1014 (1997). And as a result, the privacy of Washington citizens remains threatened and the doctrine of automatic standing, as formulated in *Williams*, fails to serve one of its essential purposes.

Review denied at 144 Wn.2d 1005 (2001).