**UNITED STATES, Appellant,**

v.

**Norman PANNELL, Appellee.**

**No. 4963.**

District of Columbia Court of Appeals.

Argued July 7, 1969.

Decided Oct. 3, 1969.

John G. Gill, Jr., Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and Frank Q. Nebeker and Frederick G. Watts, Asst. U. S. Attys., were on the brief, for appellant. Roger E. Zuckerman, Asst. U. S. Atty., also entered an appearance for appellant.

John A. Shorter, Jr., Washington, D. C., for appellee.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge.

The Government appeals [1] from an order entered by the trial court prior to trial

---

1. Pursuant to D.C.Code 1967, § 23–105 (b) (Supp. II 1969), recently added by the Omnibus Crime Control and Safe Streets Act of 1968.

suppressing narcotics paraphernalia seized from appellee's automobile on the parking lot of a police precinct station after he had been arrested and taken therefor booking on the charge of driving without a valid permit. The Government seeks to justify the search of the automobile on the ground that an inventory of its contents was necessary for the protection of appellee after the police had impounded it and to justify the seizure of the narcotics paraphernalia from the car on the ground that a syringe was in plain sight of the officer after he had entered the automobile to take the inventory.

The trial court made no findings of fact. The record shows the following. At two-thirty in the afternoon, two plain-clothes officers stopped appellee on suspicion that he was driving a stolen automobile. They radioed headquarters about the car and requested his registration card and driver's permit while awaiting a reply. The car turned out to be registered to appellee but in the meantime appellee admitted to them that he had no driver's permit. Thereupon, the officers arrested appellee for driving without a permit. One officer rode with appellee in his car five blocks to police precinct No. 13 and ordered him to park on the precinct lot.[2] No parking space was available on the street.

At the precinct one of the arresting officers learned that appellee's permit had been revoked for operating a vehicle under the influence of narcotics. Thereafter, he instructed his partner to impound appellee's car and inventory its contents. The officer's explanation in his testimony for impounding appellee's car was that appellee could not drive it because he had no permit and that he had no one available to come to the precinct to drive it away "within a reasonable time". Appellee had advised the officer, according to the latter's testimony, that there was no one he could "call or contact immediately" to come and get the car but "that after someone got off work" the car could be taken away. The inventory was taken at 3:00 or 3:15 p. m. *before* the police had booked appellee on the traffic charge. Appellee could not post bond and obtain his release until the booking process was completed.

The police officer making the inventory testified that he searched the entire car and saw the tip of a syringe sticking out from under the mat on the floor of the front seat next to the "hump". When the officer rolled back the mat he discovered narcotics paraphernalia. Appellee was charged with possessing narcotics paraphernalia and operating a motor vehicle after revocation of his permit and released on bond sometime after 4 p. m.

The Constitution forbids unreasonable searches and seizures.[3] We are constrained by the particular facts here to conclude that the search of appellee's car was not reasonable and the trial court's order must be affirmed.

■■■ The Government argues that after it impounded appellee's car it had a duty to inventory the contents for the protection of appellee. *See* Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967). We recognize the need of the Government to protect by proper inventory-taking both the property of those arrested and itself against future claims for property loss and damage by those taken into custody. Nevertheless, the police must first have had a lawful basis for acquiring custody of appellee's auto before they could employ safe-keeping methods such as an inventory of its contents. Williams v. United States, D.C.Mun.App., 170 A.2d 233 (1961).

---

2. This officer did not see the syringe sticking out from under the mat on the floor of the front seat which his partner testified was in plain view when *he* searched the car a few minutes later.

3. *See* Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

Cooper v. California, 386 U.S. 58, 87 S. Ct. 788, 17 L.Ed.2d 730 (1967), relied upon by the Government to justify the impounding of appellee's car is inapposite to the instant case. There, the automobile was impounded by California authorities pursuant to a statute *forfeiting to the state* cars used to transport narcotics and had been in state custody for one week before the police took an inventory. Here, at the time of arrest, appellee's car was not subject to forfeiture for transporting contraband and had been on the precinct lot less than one hour before the police commenced their inventory.

In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), which the Government cites to us, the police had impounded the defendant's automobile *as evidence* after his arrest for robbery. Appellee's car did not constitute evidence in the instant case since his arrest was for a traffic offense.

The officer gave as the reason for impounding appellee's car that appellee had no one available to remove it from the precinct lot "within a reasonable time", but appellee advised the officers, according to the record, that he did have someone who could come for the car after work. There is nothing in the record to show that appellee's auto was obstructing police operations parked on the lot where he had been instructed to leave it by the arresting officers when he arrived at the precinct just before three o'clock, or that he ran the risk of damage or theft to his car if it remained adjacent to the police station for the length of time between his booking, which was not completed until at least 4 p. m. and the arrival of his representative after work to drive away the car. Significantly, the decision to impound was made *after* the officers learned that the reason appellee had lost his license was because of prior narcotics use and the search was made *before* he had even been booked on the traffic offense for which he had been arrested.

We do not invalidate by our decision today inventory searches by the police of vehicles within their *lawful* custody. We hold only that the police had no reason under the circumstances of this case to impound appellee's car and their subsequent search of it was exploratory and therefore forbidden. The trial court's order of suppression is

Affirmed.