# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GREGORY TAYLOE-MCCANDLESS, )
individually, and BECKY GEARHART, )     NO. 72736-2-I
individually, and SARA ANDERSON, )
Personal Representative for the Estate )
Of Hunter L. McCandless and on behalf )
of the Estate of Hunter L. McCandless, )
                                       )
                 Appellants,           )
                                       )     DIVISION ONE
            v.                         )
                                       )
STATE OF WASHINGTON, and its           )
subsidiaries, THE DEPARTMENT           )
OF SOCIAL AND HEALTH SERVICES )
AND CHILD PROTECTIVE SERVICES, )            UNPUBLISHED OPINION
JOHN DOES, 1-10, JANE DOES, 1-10 )
and CORPORATIONS ABC, DEF &            )
GHI,                                   )
                                       )
                 Respondents.          )     FILED: August 17, 2015
                                       )
_____)

LAU, J. — Gregory Tayloe-McCandless, Becky Gearhart,[1] and the estate of

Hunter McCandless (collectively "McCandless") appeal the trial court's dismissal of their

wrongful death negligence action against the State of Washington, the Department of

---

[1] Appellants' written submissions below and on appeal appear to misspell Gearhart's last name. In this opinion we use the spelling from the caption in the amended complaint.

Social and Health Services, and other respondents (collectively "DSHS") under Civil Rule 12(c). On appeal they claim that they properly pleaded causes of action against DSHS for negligent failure to make a report of child abuse and neglect and for negligent failure to conduct an investigation. They also contend the trial court improperly denied their motion to amend their complaint under CR 15. Because McCandless fails to show that DSHS owed them a duty to report or investigate alleged abuse or neglect of Hunter and because the trial court properly declined to rule on the oral motion to amend the complaint, we affirm.

## FACTS

The first amended complaint for damages alleges the following: on May 26, 2010, three-month-old Hunter McCandless died while in the care of his father, Gregory Tayloe-McCandless.[2] The death occurred when Gregory suffered a seizure and collapsed on top of Hunter, suffocating him.

At the time of his death, Hunter was living with his parents and five-year-old sister at their apartment in Everett, Washington. Hunter's mother, Becky Gearhart, worked during the day while Gregory stayed at home to care for Hunter.

Gregory received medical care for epilepsy and suffered from seizures. His doctors cautioned that he should not be left alone with his children due to his risk of seizures.

Gregory and Gearhart applied to the State of Washington and DSHS for childcare assistance. To support their application, they submitted a doctor's letter

---

[2] We use first names for clarity.

stating, "this is to confirm Mr. Tayloe-McCandless has epilepsy and should not be left solely caring for his young children."

DSHS denied the application.[3]

In June 2013, McCandless, Gearhart, and the personal representative of Hunter's estate (McCandless) filed a lawsuit against DSHS alleging it was negligent in failing to extend childcare benefits. The complaint further alleged that DSHS:

> conducted no investigation into the home where Plaintiffs and their minor children resided and did not intervene to prevent Tayloe-McCandless from being alone at home with his child. Despite its knowledge that a child was in the sole custody of his father, an epileptic who posed an immediate danger to the child, Defendant did nothing.

Clerk's Papers (CP) at 58. In essence, McCandless alleges that DSHS owed them a duty to report, investigate, and remove Hunter from their home and its failure to do so proximately caused Hunter's death.

In September 2014, DSHS filed a motion for judgment on the pleadings under Civil Rule 12(c). DSHS argued that McCandless' claim for failure to extend childcare benefits is not a cognizable cause of action. DSHS also argued that even assuming the truth of each of McCandless' allegations, they failed to establish a cause of action under the Abuse of Children statute, chapter 26.44 RCW, because they alleged neither a harmful placement decision nor child abuse or neglect.

---

[3] In its answer to McCandless' complaint, DSHS states this denial was based on the parents' failure to complete the application. At oral argument to this court, appellants' counsel acknowledged that the parents failed to complete their application timely and failed to reapply for benefits after their application was denied.

In October 2014, the trial court granted DSHS's motion and dismissed the complaint. The trial court also declined to rule at that time on McCandless' oral motion to amend the complaint.

McCandless appeals.[4]

## ANALYSIS

### Standard of Review

McCandless appeals from the trial court's dismissal of their claims for negligent failure to report abuse or neglect and negligent failure to investigate abuse or neglect under Civil Rule 12(c).

This court treats a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim. P.E. Systems, LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). "Like a CR 12(b)(6) motion, the purpose is to determine if a plaintiff can prove any set of facts that would justify relief." P.E. Systems, 176 Wn.2d at 203. Dismissal under a 12(b)(6) claim is appropriate where it appears beyond a reasonable doubt that no facts exist that would justify recovery, even when accepting as true the allegations contained in the plaintiff's complaint. P.E. Systems, 176 Wn.2d at 210-11. In performing this analysis, we "must take the facts alleged in the complaint, as well as hypothetical facts, in the light most favorable to the nonmoving party." M.H. v. Corp. of Catholic Archbishop of Seattle, 162

---

[4] McCandless does not assign error or present argument on their claim that DSHS failed to extend childcare benefits. A party abandons an issue on appeal by failing to brief the issue. Holder v. City of Vancouver, 136 Wn. App. 104, 107, 147 P.3d 641 (2006). We decline to address this issue.

Wn. App. 183, 189, 252 P.3d 914 (2011). We review dismissal under CR 12(c) de novo. P.E. Systems, 176 Wn.2d at 203.

The primary issues in this appeal relate to whether DSHS owed McCandless a duty sufficient to support a cause of action in negligence. A claim for negligence requires a plaintiff to establish "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013).

In a negligence action, courts first address the threshold question of whether the defendant owes a duty of care to the injured plaintiff. Estate of Kelly v. Falin, 127 Wn.2d 31, 36, 896 P.2d 1245 (1995). At common law, the State was immune from lawsuit. Linville v. State, 137 Wn. App. 201, 208, 151 P.3d 1073 (2007). Thus, only where the legislature has expressly waived sovereign immunity by statute can there be the possibility of an actionable duty owed by the State. Linville, 137 Wn. App. at 208. That duty may be found in the language of the statutes. Tyner v. Dep't of Social and Health Serv's, 141 Wn.2d 68, 78, 1 P.3d 1148 (2000).

Existence of a Duty

McCandless argues that the trial court erred by dismissing their lawsuit because they pleaded a valid negligence cause of action in Washington. But McCandless' arguments merely assume that given Gregory's seizure disorder, leaving him alone to care for Hunter constitutes child abuse or neglect. McCandless pleaded no facts, actual and imagined, that trigger a duty on the part of DSHS to report or to investigate acts of alleged child abuse or neglect under the unique circumstances presented here.

The Abuse of Children statute contains mandatory reporting, investigation, and other procedures related to child abuse. In enacting this statute, the legislature stated its intent to safeguard children from abuse or neglect:

> The Washington state legislature finds and declares: The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; however, instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred. . . .

RCW 26.44.010 (emphasis added).

Under RCW 26.44.030, all DSHS employees are mandatory reporters required to report abuse when there is "reasonable cause to believe that a child has suffered abuse or neglect." "Abuse or neglect" are statutorily defined as:

> [S]exual abuse, sexual exploitation, or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety, excluding conduct permitted under RCW 9A.16.100; or the negligent treatment or maltreatment of a child by a person responsible for or providing care to the child. An abused child is a child who has been subjected to child abuse or neglect as defined in this section.

RCW 26.44.020(1).

"Negligent treatment" is defined as:

> [A]n act or failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100.

RCW 26.44.020(16).

Mandatory reporters must report suspected abuse within 48 hours of developing reasonable cause to believe abuse or neglect has occurred. RCW 26.44.030(1)(g). Similarly, DSHS is required by statute to investigate and provide protective services when it receives a report alleging possible abuse or neglect. RCW 26.44.050.

The core of McCandless' contention is that the "State did nothing after being presented with information and becoming aware that [Gregory] posed a threat to the welfare and wellbeing of his children." Br. of Appellant at 11. Citing to the statement of legislative intent in RCW 26.44.010, McCandless argues that the child abuse statutes are "broadly worded to protect children from non-accidental injury and death and to protect and safeguard such children's safety and health." Br. of Appellant at 9.

RCW 26.44.010, quoted above, expresses the legislature's concern over abuse involving "nonaccidental" injury, among others, where a child is deprived of minimal nurture, health, and safety. Here, no party disputes that the death of Hunter was a tragic accident.

The Legislature also clearly expressed its intent to insulate a parent from allegations of child abuse or neglect based solely on the existence of a parent's disability or handicap.

> No parent or guardian may be deemed abusive or neglectful solely by reason of the parent's or child's blindness, deafness, developmental disability, or other handicap.

RCW 26.44.015(3).

This unambiguous language leaves no doubt that Gregory's epilepsy seizure disorder falls squarely within this statute's narrow limitation.

McCandless relies on Beggs v. Dep't of Social and Health Serv's, 171 Wn.2d 69, 247 P.3d 421 (2011), Yonkers v. Dep't of Social and Health Servs., 85 Wn. App. 71, 930 P.2d 958 (1997), M.W. v. Dep't of Social and Health Serv's, 149 Wn.2d 589, 70 P.3d 954 (2003), Lewis v. Whatcom County, 136 Wn. App. 450, 149 P.3d 686 (2006). But those cases do not control because unlike here, they undisputedly involve direct

physical abuse or neglect of a child. McCandless cites to no controlling authority extending the statutory duty to report and investigate child abuse and neglect to the unique circumstances presented here.

Likewise, nothing in chapter 26.44 RCW's statutory scheme indicates the legislature intended to expand the duty alleged here premised on a parent's diagnosed medical condition. Indeed, the legislature required "reasonable cause to believe that a child has suffered abuse or neglect" before the State may intrude in "[t]he bond between a child and his or her parent . . . any intervention into the life of a child is also an intervention into the life of the parent . . . ." RCW 26.44.010.

McCandless further contends that the trial court "should also accept as true that the State and its employees had a duty to report under RCW 26.44.030 but failed to do." Br. of Appellant at 11. This argument is equally misplaced. As discussed above, no duty runs to the DSHS as a matter of law. A motion for judgment on the pleadings admits only the facts well pleaded, not mere legal conclusions, the pleader's interpretation of the statute involved, or his construction of the subject matter. City of Moses Lake v. Grant County, 39 Wn. App. 256, 262, 693 P.2d 140 (1984). Whether or not the duty element exists in the negligence context is a question of law that is reviewed de novo. Sheikh v. Choe, 156 Wn.2d 441, 448, 128 P.3d 574 (2006).

We conclude that under the unique circumstances here, McCandless pleaded no facts, real and imagined, sufficient to trigger a duty on the part of DSHS to investigate and report.

Motion to Amend Complaint

McCandless contends that the trial court erred when it "denied" his motion to amend his complaint. Br. of Appellant at 15. We disagree. The record plainly shows the trial court declined to rule on the motion at that time.

Under CR 15(a), a plaintiff must obtain permission from the court or written consent of the adverse party to amend a complaint if an answer has been filed. The rule also provides that leave to amend "shall be freely given when justice so requires." CR 15(a). The decision to grant leave to amend the pleadings is within the discretion of the trial court. Wilson v. Horsley, 137 Wn.2d 500, 505, 947 P.2d 316 (1999). The trial court's decision will not be disturbed except where there is a clear showing of an abuse of discretion. Wilson, 137 Wn.2d at 505.

The trial court's minute entry states: "Plaintiff's motion to amend the complaint: not ruled upon as it is not before the court today." CP at 3. McCandless submitted no written motion to amend and attached no proposed amended pleading. CR 15(a). No signed order denying the oral motion to amend is included in our record.

McCandless relies on Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 189 P.3d 168 (2008). That case does not apply. There, the trial court denied plaintiffs' motion to amend the pleadings without an explicit explanation. We affirmed the denial because the apparent reason was futility of amendment.

Here, the trial court did not rule on the motion so there is no ruling for this court to review. See Mayekawa Mfg. Co. v. Sasaki, 76 Wn. App. 791, 796 n.6, 888 P.2d 183 (1995) (ruling must be final and definitive to preserve right to review). The trial court's explanation that McCandless' oral motion was not properly before it, left open the

opportunity for McCandless to note a subsequent motion to amend the complaint.

McCandless made no motion to amend the complaint.

## CONCLUSION

For the reasons discussed above, we affirm the CR 12(c) dismissal of McCandless' negligence lawsuit.

WE CONCUR: